UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RONNY VALDEZ,

                            Plaintiff,

-against-

THE CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, and WILLIAM SAMPLE, *Individually*,

                            Defendants.
------------------------------------------------------------------------X

Case No. 14 CV 0714

JUDGE BRODERICK

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

RECEIVED FEB 04 2014

Plaintiff, RONNY VALDEZ, by his attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, upon information and belief, complains as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. § 1981 and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et. seq.*, and seeks damages to redress the injuries he has suffered as a result of being **Harassed and Discriminated Against on the basis of his Race (Hispanic)** and **Retaliated Against** by his employer for complaining of race-based discrimination.

### JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under city law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), based upon Defendants' residency within the County of New York, State of New York, within the Southern District of New York.

## PARTIES

5. Plaintiff RONNY VALDEZ ("Plaintiff") is a resident of the State of New York, County of New York.

6. At all times hereinafter mentioned, THE CITY OF NEW YORK ("CITY"), a Defendant herein, was and is a municipal corporation organized and existing as such under and by the virtue of the laws of the State of New York.

7. At all times hereinafter mentioned, NEW YORK CITY POLICE DEPARTMENT ("NYPD"), a Defendant herein, is a department subdivision of Defendant CITY and is a municipal entity duly organized and existing under and by the virtue of the laws of the State of New York.

8. At all times relevant, Defendant CITY operated, maintained, controlled and supervised Defendant NYPD as a police department of Defendant CITY.

9. At all times relevant, Plaintiff was and is an employee of Defendant NYPD and Defendant CITY.

10. At all times relevant, Plaintiff works for Defendant NYPD's "Bronx Task Force."

11. At all times relevant, Defendant WILLIAM SAMPLE ("SAMPLE") was and is a resident of the State of New York.

12. At all times relevant, Defendant SAMPLE was and is an employee of Defendant NYPD and Defendant CITY, holding the position of "Sergeant."

13. At all times relevant, Defendant SAMPLE works for Defendant NYPD's "Bronx Task Force."

14. At all times relevant, Defendant SAMPLE served as Plaintiff's supervisor and/or held supervisory authority over Plaintiff.

15. Defendants CITY, NYPD, and SAMPLE are herein collectively referred to as "Defendants."

## MATERIAL FACTS

16. In or around 2006, Plaintiff began working for Defendants as a "Police Officer," and after years of exemplary service, ultimately started earning a salary of approximately $130,000 per year.

17. In fact, throughout Plaintiff's employment, he has been an exemplary employee and has always received compliments for his work performance.

18. However, Plaintiff's work environment began to change after Plaintiff was transferred to Defendant NYPD's "Bronx Task Force" in 2007 and began being supervised by Defendant SAMPLE in 2011.

19. Although initially Plaintiff heard other employees discussing Defendant SAMPLE's racial comments and bigotry in the office, Plaintiff did not experience such racism personally from Defendant SAMPLE until September 2013 when Plaintiff refused to follow Defendant SAMPLE's advice and break company policy.

20. Thereafter, Defendant SAMPLE completely changed his attitude toward Plaintiff and grew incredibly hostile, demonstrating to Plaintiff the racial animus Plaintiff had been hearing about for years.

21. By way of example, beginning in or around September 2013, Defendant SAMPLE began routinely making disparaging remarks about Plaintiff's race, constantly calling Plaintiff a **"fucking Dominican."**

22. Defendant SAMPLE also began calling Plaintiff a **"non-English speaking Dominican pussy."**

23. Further, Defendant SAMPLE began making disparaging statements such as **"Ever since these fucking Dominicans came on the job the boat has been sinking!"**

24. On or about October 2, 2013, Plaintiff officially had his schedule changed and was no longer in Defendant SAMPLE's squad. Namely, Plaintiff joined Lieutenant David Kessler's squad. Plaintiff had requested a transfer following Defendant SAMPLE advising Plaintiff to break NYPD rules and use "sick days" to go on vacation.

25. Despite having transferred squads, Defendant SAMPLE continued his discriminatory campaign against Plaintiff.

26. By way of example, on or about October 3, 2013, Defendant SAMPLE said loudly and in the presence of Plaintiff, "If this fucking dick (referring to Plaintiff) doesn't start at 8, **I'm going to fuck him like I did to 'Cotto.'** He thinks he will have it easy now that he left my squad!" (By way of background, "Cotto" is a reference to a police officer named Gabriel Cotto, who Defendant SAMPLE had suspended in the past).

27. **Tired of enduring these offensive racially derogatory remarks, on or about October 18, 2013, Plaintiff complained to the Human Resources Department of Defendant NYPD ("HR") about Defendant SAMPLE's racially derogatory comments and behavior.**

28. However, Plaintiff's complaint to Defendants' HR did little to assuage Defendant SAMPLE's behavior.

29. By way of example, on or about October 26, 2013, when Plaintiff arrived at work, Defendant SAMPLE stated in a loud voice in front of Plaintiff and others, "This motherfucker (referring to Plaintiff) thinks he can do anything he wants but I got his coming. **I will fuck him like I did to Cotto!"**

4

30. Plaintiff exited the precinct but Defendant SAMPLE followed him outside. Once outside, Defendant SAMPLE said in a loud voice in front of others, **"I will fuck this motherfucker."**

31. Shortly thereafter, Plaintiff complained to Lieutenant Steve Ruffino, Defendant SAMPLE's supervisor, about the racially hostile and retaliatory work environment that Defendant SAMPLE was subjecting him to.

32. Plaintiff also asked Lieutenant Ruffino for a sit-down meeting with him (Ruffino) and Defendant SAMPLE. Defendant SAMPLE adamantly refused to meet with them and discuss the situation.

33. Despite Plaintiff's complaints to Defendants' HR and Defendant SAMPLE's supervisor, Defendant SAMPLE continued to retaliate against Plaintiff for complaining about Defendant SAMPLE's racial discrimination and retaliation.

34. By way of example, on or about October 22, 2013, Plaintiff was on "phone duty" when Defendant SAMPLE entered the precinct. Defendant SAMPLE called Plaintiff a **"fucking faggot"** and said, **"this fucking Dominican, I can't wait until Plaintiff fucks up so I can suspend [Plaintiff] like I suspended Cotto."**

35. On or about October 25, 2013, Defendant SAMPLE was again speaking to others in a loud voice so Plaintiff could hear and called Plaintiff **"a fucking rat" in reference to Plaintiff's complaint to HR** as well as calling him a "fucking motherfucker" and a "faggot."

36. Defendant SAMPLE continued by saying, **"This motherfucker can't do anything to me; I am a boss and he will do anything I say, so go get some cheese for this fucking rat!"**

5

37. Defendant SAMPLE then stated, "No one who has gone against me will survive. **I will fuck this motherfucker like he's never been fucked before and I will make sure it happens before I leave this job!**"

38. On or about October 30, 2013, Plaintiff complained to an Integrity Control Officer ("ICO") at Defendant NYPD about the ongoing racial discrimination and harassment by Defendant SAMPLE. The ICO told Plaintiff that he would speak to Defendant SAMPLE.

39. Plaintiff did not see Defendant SAMPLE much from the end of October 2013 until mid-December 2013 by virtue of them having different schedules. However, the discrimination did not end. On December 14, 2013, Plaintiff arrived to work and saw that Defendant SAMPLE had printed out a picture of Plaintiff and posted it on a bulletin board.

40. In this photo, Defendant SAMPLE had drawn two penises, one pointed at Plaintiff's mouth, and the other pointed at Plaintiff's buttocks.

41. Plaintiff knew that Defendant SAMPLE was the person who had printed off this photo as Defendant SAMPLE's name was typed at the bottom.

42. Defendant SAMPLE wrote "TRAGA LECHE" above the penis directed at Plaintiff's mouth. "Traga Leche" is Spanish for "Drinks Semen."

43. Additionally, Defendant SAMPLE wrote "Ruffino" inside the penis directed at Plaintiff's buttocks. As previously stated, Lieutenant Ruffino is Defendant SAMPLE's supervisor and to whom Plaintiff had previously complained about the hostile work environment created by Defendant SAMPLE.

44. Plaintiff removed the photograph of himself and went to the locker room.

45. Upon entering the locker room, Plaintiff was shocked to realize that Defendant SAMPLE had also drawn a penis on a photograph of Plaintiff's face which was on the door of his locker.

46. Appalled at Defendant SAMPLE's actions, Plaintiff complained to his supervisor Lieutenant Kessler about these clearly retaliatory drawings and their captions.

47. On or about December 24, 2013, Plaintiff made a complaint to Defendant NYPD's Office of Equal Employment Opportunity.

48. Thereafter, on or about January 2, 2014, Plaintiff filed a complaint with the Equal Employment Opportunity Commission.

49. Plaintiff is still employed by Defendants and continues to be discriminated against on the basis of his race (Hispanic), and retaliated against, on a daily basis.

50. The above are just some of the acts of racial discrimination and retaliation that Plaintiff has experienced, and continues to experience, on a regular and continual basis while employed by Defendants.

51. Plaintiff has been unlawfully discriminated against, humiliated, degraded, victimized and embarrassed.

52. Defendants' actions and conduct were, and are, intentional and intended to harm Plaintiff.

53. As a result of Defendants' discriminatory and intolerable treatment of Plaintiff, he has suffered severe emotional distress and physical ailments.

54. Plaintiff has suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

55. Because of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of the Court.

56. Defendants' conduct has been, and is, malicious, willful, outrageous, and conducted with full knowledge of the law. As such, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

### AS A FIRST CAUSE OF ACTION
### FOR DISCRIMINATION UNDER 42 U.S.C. § 1981

57. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58. 42 U.S.C. § 1981 states in relevant part, as follows:

    (a) Statement of equal rights

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b) "Make and enforce contracts" defined

    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

59. Defendants violated 42 U.S.C. Section 1981 by discriminating against Plaintiff on the basis of his race (Hispanic).

### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER 42 U.S.C. § 1981

60. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. 42 U.S.C. Section 1981 states in relevant part as follows:

    (a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

62. Defendants violated 42 U.S.C. Section 1981 by unlawfully retaliating against him.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

63. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

64. The Administrative Code of City of New York § 8-107(1) provides that:

It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

65. Defendants engaged in an unlawful discriminatory practice in violation of the Administrative Code of City of New York § 8-107(1) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of his race (Hispanic).

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

66. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

9

67. The Administrative Code of City of New York § 8-107(7) provides that:

   It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter…

68. Defendants engaged in an unlawful discriminatory practice in violation of the Administrative Code of City of New York § 8-107(7) by retaliating and discriminating against Plaintiff because he opposed Defendants' discrimination on the basis of his race (Hispanic).

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. The Administrative Code of City of New York § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

71. Defendants engaged in an unlawful discriminatory practice in violation of Administrative Code of City of New York § 8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. The Administrative Code of City of New York § 8-107(13) provides for employer liability for discriminatory conduct by an employee, agent or independent contractor.

This sub-section states:

a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   1. the employee or agent exercised managerial or supervisory responsibility; or

   2. the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

   3. the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such

11

conduct.

74. Defendants violated the section cited herein as set forth.

## JURY DEMAND

75. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. § 1981 and The Administrative Code of City of New York, § 8-107, *et. seq.*; and that the Defendants discriminated against, harassed, and retaliated against Plaintiff, on the basis of his race (Hispanic);

B. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
      February 3, 2014

PHILLIPS & ASSOCIATES
ATTORNEYS AT LAW, PLLC

*/s/ Casey Wolnowski*
Casey Wolnowski (CW1122)
45 Broadway, Suite 620
New York, NY 10006
(212) 248-7431
cwolnowski@tpglaws.com
